UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-60770-BLOOM/Valle

CALLIE GISSENDANNER,

    Plaintiff,
v.

AREA WIDE PROTECTIVE, INC.,

    Defendant.
_____/

# ORDER

**THIS CAUSE** is before the Court upon Defendant Area Wide Protective, Inc.'s ("Defendant") Motion to Dismiss, ECF No. [19] (the "Motion"), with respect to Counts VI and VII of Plaintiff Callie Gissendanner's ("Plaintiff") Amended Complaint, ECF No. [18] (the "Complaint"). The Court has carefully reviewed the Motion, all supporting and opposing submissions, including Plaintiff's Response, ECF No. [20] ("Response"), the record, and applicable law. For the reasons set forth below, the Motion is **DENIED**.

**I. Background**

Plaintiff initiated this action on April 7, 2016, for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Florida Civil Rights Act, § 760.10, Fla. Statute *et seq.* ("FCRA"); Florida Statute § 440.205; and Florida common law claims of intentional infliction of emotional distress ("IIED") and negligent supervision, training, and retention. Defendant filed a motion to dismiss Counts VI (IIED) and VII (negligent supervision, training, and retention) of the original complaint, shortly thereafter, ECF No. [8] (the "Original Motion") – a motion that is strikingly similar to the instant Motion before the Court. *See generally* Defendant's Motion to Dismiss.

The Court issued an order granting the Original Motion for a more definite statement of Count VI, because Plaintiff failed to point to specific intentional or reckless conduct of the Defendant, an essential element of IIED.  *See* Order on Motion to Dismiss for Failure to State a Claim at 5, ECF No. [17] (the "Order").  Moreover, and unmistakably, the Court denied the Original Motion to dismiss Count VII, ruling that the count was sufficiently alleged.  *See* Order at 8.  As directed, Plaintiff then filed her Amended Complaint.  Now, raising many of the same arguments as it did in its Original Motion – that were already rejected – Defendant, once again, seeks to dismiss Counts VI and VII for failure to state a claim.  *See generally* Motion.

According to the Complaint, Defendant hired Plaintiff as a "traffic specialist/flagger" and another employee, Jermaine Brown ("Brown"), as a "Crew Chief."  Compl. ¶¶ 12, 14.  Plaintiff alleges that Brown "grabbed her face," "kissed her on the lips," and, in the weeks following, "continued to place his hands on Plaintiff's shoulders and repeatedly touch her."  *Id.* ¶¶ 14, 17.  After Plaintiff complained to Defendant's management, Plaintiff was told that she would not be scheduled to work the same shift with Brown again.  *Id.* ¶¶ 18, 21.  However, she was, in fact, assigned to work with Brown again a few weeks later.  *Id.* ¶ 22.  Plaintiff then complained to management a second time.  *Id.* ¶ 23.  A short time later, Plaintiff was injured on the job, *id.* ¶ 31, and once she reported her injury to the worker's compensation carrier for Defendant, she was terminated, *id.* ¶¶ 80, 81.  Plaintiff seeks relief under, *inter alia*, Florida common law for IIED, as she has now specifically alleged in her Complaint that the Defendant "fail[ed] to reprimand and/or terminate []Brown; forc[ed] Plaintiff to continue to work with []Brown after her complaints of sexual harassment and battery by []Brown; and, discuss[ed] Plaintiff's complaints regarding []Brown to non-supervisory/non-managerial employees."  *See Id.* ¶ 88.  Plaintiff also

alleges negligent supervision, training, and retention because, as alleged, despite becoming aware of the unwelcomed physical contact from Brown, Defendant took no corrective action. *See id.* ¶¶ 94-97.

## II. Legal Standard

Rule 8 of the Federal Rules requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as

true."). Accordingly, a court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). However, although a court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). The Supreme Court was clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Through this lens, the Court addresses the instant Motion.

### III. Discussion

As noted above, the Motion seeks to dismiss Counts VI (IIED) and VII (negligent supervision, training, and retention) of the Complaint. Pursuant to Count VI, Plaintiff has now specified the intentional or reckless conduct that serves as the foundation for her IIED claim. *See* Compl. ¶ 88. Specifically, Plaintiff alleges that the Defendant "fail[ed] to reprimand and/or terminate []Brown; forc[ed] Plaintiff to continue to work with []Brown after her complaints of sexual harassment and battery by []Brown; and, discuss[ed] Plaintiff's complaints regarding []Brown to non-supervisory/non-managerial employees." *Id.* Defendant, nevertheless, argues that this iteration does not satisfy the second element of an IIED claim, namely, that the conduct was outrageous. *See* Motion ¶ 3. The Court disagrees. *See Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (setting forth elements of an IIED claim, including: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused

emotional distress; and (4) the emotional distress was severe"); *Ingram v. Butter*, No. 14-cv-21392, 2015 WL 9911314, at *5 (S.D. Fla. Dec. 23, 2015) (same).

Under Florida law, "[w]hether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citing *Medina v. United Christian Evangelistic Ass'n,* No. 08–22111–CV–Cooke, 2009 WL 653857, at *4 (S.D. Fla. Mar. 9, 2009)); *see Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) ("Whether conduct is outrageous enough to support a claim of [IIED] is a question of law, not a question of fact.") (citing *Gandy v. Trans World Computer Tech. Group*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001)).  "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Garcia*, 838 F. Supp. 2d at 1339 (citation omitted).  The Florida Supreme Court, when it recognized the common law tort of IIED, adopted the definition of "extreme and outrageous" conduct set forth in the Restatement (Second) of Torts (1965) § 46 as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985).

Courts in this District, accordingly, have allowed IIED claims where the conduct crosses a threshold beyond "mere harassment." *Urquiola v. Linen Supermarket, Inc.*, No. 94-14-cv-

ORL-19, 1995 WL 266582 at *4 (M.D. Fla. March 23, 1995) (denying motion to dismiss where defendant's "alleged actions went beyond mere harassment or verbal abuse"); *see Albert v. National Cash Register Co.*, 874 F. Supp. 1328, 1331 (S.D. Fla. 1994) (denying motion to dismiss where plaintiff "alleged pervasive pattern of constant harassment"); *Johnson v. Thigpen*, 788 So. 2d 410, 414 (Fla. 1st DCA 2001) (affirming trial court's denial of motion for directed verdict where evidence showed "persistent acts of verbal abuse" and "repeated offensive, unwelcome physical contact."); *Vernon v. Medical Mgmt. Ass. of Margate, Inc.*, 912 F. Supp. 1549, 1560 (S.D. Fla. 1996) (denying motion to dismiss where plaintiff alleged "a pattern of persistent verbal and physical abuse that culminated in her constructive discharge").

Importantly, "[i]n certain instances, courts have allowed plaintiffs to state a claim for [IIED] if the plaintiff 'is peculiarly susceptible to emotional distress, and the other person knows it,' wherein courts may use a lower standard for 'outrageous' to evaluate the conduct in question." *Bakar v. Bryant*, -- F. Supp. 2d --, 2013 WL 5534235, at *3 (S.D. Fla. Oct. 7th, 2013) (citing *Jenks v. Naples Comm'y Hosp.*, 829 F. Supp. 2d 1325, 1256 (M.D. Fla. 2011)). "However, this exception applies only where the complaint pleads facts showing that the defendant *knew* of the plaintiff's susceptibilities." *Id.* (citing Restatement (Second) of Torts § 46 illus. 12 ("A is in a hospital suffering from a heart illness. . . . B enters A's sick room for the purpose of trying to settle an insurance claim.  B's insistence and boisterous conduct causes serve emotional distress, and A suffers a heart attack.  B is subject to liability to A if he knows of A's condition, but is not liable if he does not have such knowledge.")).  Moreover, "the unequal position of the parties in a relationship, where one asserts and has the power to affect the interests of the other, may also supply the heightened degree of outrageousness required for a

claim of [IIED]." *Liberty*, 968 So. 2d at 596 (citing Restatement (Second) of Torts § 46 cmt. e.).

According to Defendant, "Plaintiff merely alleges that one of Defendant's employees touched Plaintiff on the shoulders and that the Defendant ultimately changed Plaintiff's schedule in response[.]" Motion ¶ 12.  Apparently, the Defendant did not read Plaintiff's allegations in their entirety.  In fact, Plaintiff alleges that Brown "grabbed her face," "kissed her on the lips," and, even after Plaintiff told Brown that "his advances were unwelcome" and "to refrain from touching her," Brown "continued to place his hands on Plaintiff's shoulders and repeatedly touched her."  Compl. ¶¶ 14-17.  Plaintiff further claims that Defendant "fail[ed] to reprimand and/or terminate []Brown; forc[ed] Plaintiff to continue to work with []Brown after her complaints of sexual harassment and battery by []Brown; and discuss[ed] Plaintiff's complaints regarding []Brown to non-supervisory/non-managerial employees."  *See Id.* ¶ 88.

The allegations in this case clearly warrant the use of a lower standard of outrageousness. *Liberty*, 968 So. 2d at 595, is instructive on this point.  In that case, the plaintiff filed an IIED claim alleging that the defendant "delayed authorizing a double lung transplant" after being ordered to pay for it.  *Id*.  The plaintiff alleged that the defendant "knew based on physician testimony that [plaintiff] was not expected to survive until the following year."  *Id.*  "Based on that knowledge," the plaintiff alleged, "[defendant] intentionally denied and delayed payment for treatment in an effort to speed up [plaintiff's] demise, to induce stress that it knew would be detrimental to her health, and to inflict emotional distress."  *Id.*  The court held that "[v]iewed in isolation, the conduct . . . was not so outrageous" – however, "paired with [plaintiff's] specific allegation that [defendant] knew" of plaintiff's susceptibility to emotional distress, and the unequal power relationship of the parties, the alleged conduct was outrageous.  *Id.* at 596.

7

Here, Plaintiff alleges that Defendant knew of the ongoing harassment by Brown – as she complained both in person and in writing – and Defendant, in response, represented that it would no longer schedule her to work the same shift as Brown. *See* Compl. ¶¶ 18-21. In spite of this knowledge, Plaintiff alleges that Defendant "forc[ed] Plaintiff to continue to work with []Brown after her complaints of sexual harassment and battery by []Brown[.]" Compl. ¶¶ 22, 88. This knowledge of Plaintiff's susceptibility to distress from the specific situation that Defendant continued to impose upon her, coupled with the unequal power dynamic inherent in an employer/employee relationship, convinces the Court that a lower standard of outrageousness is appropriate in this case. *See Bakar*, 2013 WL 5534235, at *3 (where plaintiff "is peculiarly susceptible to emotional distress, and the other person knows it," courts may use a lower standard to evaluate what is outrageous).

Using this lower standard of outrageousness and taking the Plaintiff's allegations as true, as Federal Rule 12(b)(6) requires, the conduct described in the Amended Complaint rises above claims of standard harassment. Repeated unwelcome and offensive touching by Brown, particularly where Defendant required Plaintiff to work with her harasser *after* being made aware of the harassment, is conduct that an average member of the community would consider to be atrocious, and utterly intolerable in a civilized community. *Metropolitan Life*, 467 So. 2d at 278-79; *see Liberty*, 968 So. 2d at 596 (finding that, although allegations of conduct alone were "not so outrageous," when was viewed in light of defendant's alleged knowledge of plaintiff's susceptibility to emotional distress, they were outrageous); *cf. Bakar*, 2013 WL 5534235, at *4 ("Plaintiffs' suggestion that Defendant 'should have known' that his conduct might upset someone is inapposite."). The fact that Plaintiff does not plead that the Defendant "adopted or

ratified" the conduct of its employees does not change this fact. *See* Motion ¶ 15. Similarly unavailing is Defendant's argument that Plaintiff was offered night shifts as opposed to shared shifts with Brown. The Complaint clearly alleges that Plaintiff was scheduled to nights only *after* being harassed by Brown, complaining to Defendant, being forced to work with Brown again, and then complaining to Defendant yet another time. *See* Compl. ¶¶ 14-29.[1]

Ultimately, the Complaint alleges that Defendant "forc[ed] Plaintiff to continue to work with []Brown after her complaints of sexual harassment and battery by []Brown[.]" Compl. ¶ 88. At this stage, this is sufficient. The Court will provide Plaintiff the opportunity to develop this claim through discovery. *See, e.g.*, *Okwen v. Am. Mar. Officers Plans*, No. 15-60370, 2015 WL 5320882, at *5 (S.D. Fla. Sept. 14, 2015) ("Discovery will bring these specific facts to light."). Defendant does not present any other challenges to Plaintiff's IIED claim. Similarly, for the reasons explained in the Original Order at 8, Defendant fails to submit any successful arguments for dismissal of Count VII for negligent supervision, training, and retention, *see* Motion ¶¶ 17-18.[2] Counts VI and VII, therefore, both survive Defendant's Motion.

**IV.  Conclusion**

The Plaintiff has sufficiently pleaded Counts VI (IIED) and Count VII (negligent supervision, training, and retention). Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [19]**, is **DENIED**. Defendant shall **ANSWER** or otherwise respond to the Amended Complaint, **ECF No. [18], no later August 8, 2016**.

---

[1] Defendant further reiterates its corporate "intent" argument from its Original Motion. *See* Motion ¶ 16. Defendant accuses Plaintiff of failing to specify "the basis for a corporate defendant having the 'intent' to inflict severe emotional distress upon the Plaintiff." *Id.* This argument has already been addressed and deemed "not only puzzling but entirely unsupported" by this Court. *See* Order at 6.

[2] These arguments are exactly the same as the ones provided in the Original Motion ¶¶ 6-7. Indeed, nothing has changed that would warrant issuing a different decision on the same facts and law presented.

Case No. 16-cv-60770-BLOOM/Valle

**DONE AND ORDERED** in Miami, Florida, this 25th day of July, 2016.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record